1
2
3
4
5
6
7
8                              UNITED STATES DISTRICT COURT
9                           FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11  | UNITED STATES OF AMERICA,          | No. 2:24-cr-00079-DJC
12  |          Plaintiff,                |
13  | v.                                 | ORDER
14  | STEPHAN JAMES EVANOVICH,           |
15  |          Defendant.                |
16

17       Defendant Stephan James Evanovich has filed two motions to suppress
18  evidence in his case.  The first addresses information obtained from a search of a
19  Google account and the adequacy of the affidavit and warrant used to obtain that
20  information.  The second motion addresses a separate warrant for the search and
21  seizure of evidence from a property where Defendant was allegedly residing as well
22  as from Defendant's person.
23       For the reasons stated below, both of Defendant Evanovich's motions are
24  denied.
25                                  **BACKGROUND**
26       In May 2022, Trevor Fountain, another defendant in this case, was arrested by
27  the Yuba County Sheriff's Department for attempting to steal a rectifier from an AT&T
28

tower in California. (Google Account Mot. (ECF No. 142)[1] at 2; Opp'n re:Google Account Mot. (ECF No. 127) at 2.) Following his arrest, Defendant Fountain stated that he worked at "Talk 2 Me"[2] and identified Defendant Evanovich as his "boss" at that company. (*Id.*; Google Account Affidavit[3] (ECF No. 142-1, Ex. 1) ¶ 10) Police allegedly called Defendant Evanovich, who confirmed he did communications work as Talk 2 Me. (Google Account Affidavit ¶ 10.)

In August 2022, Defendant Fountain was again arrested in Colorado in connection with an investigation into the theft of rectifiers in the area. (*Id.* ¶ 15.) At the hotel where Fountain was arrested was a vehicle that had Talk 2 Me stickers, which was registered to Defendant Evanovich. (*Id.* ¶¶ 14, 18) Stolen rectifiers were allegedly found in Defendant Fountain's hotel room. (*Id.* ¶¶ 16–17) A later search of Fountain's phone found messages between Defendant Fountain and Defendant Evanovich concerning the sale of rectifiers and the usage of "burner" phones. (Haines Road Affidavit (ECF No. 138-1, Ex. 1) ¶ 13.) It also showed emails sent from talk2metel@gmail.com to Defendant Fountain. (Google Account Affidavit ¶ 24.a–d.) Those emails contained shipping labels which included "Steve Evans" and "Talk 2 Me" as part of the shipper's address. (*Id.*)

In December 2022, Andrea Mellor, an unindicted co-conspirator, and Cynthia Carter, a co-defendant in this case, were arrested in connection with the theft of

---

[1] Defendant Evanovich initially filed both motions under seal. (*See* ECF No. 121.) After it became clear that the warrants at issue in this case were no longer sealed, Defendant refiled those Motions unsealed on the docket. (*See* ECF Nos. 137, 138). Counsel later filed an amended version of the unsealed Google Account Motion (*see* ECF No. 142) that included an exhibit that had been omitted in the prior version (*see* ECF No. 137), though both are still marked as pending motions on the Court's docket. Citations to the Google Account Motion in this order are to the version at ECF No. 142, while citations to the Haines Road Motion are to the motion filed ECF No. 138.

[2] Throughout the two warrant affidavits and various briefing, different spellings of Talk 2 Me, including "Talk2Me" and "Talk to Me," are utilized. For simplicity and uniformity, the Court only utilizes the "Talk 2 Me" format.

[3] In this background section, the Court mixes citations to the affidavit supporting both the Google Account Warrant and the Haines Road Warrant. This is only to provide a more complete description of the factual and procedural background. In considering the individual motions below, the Court only considers the evidence presented in the relevant affidavit.

batteries from AT&T communications towers.  (*Id.* ¶ 27.)  Following their arrest, Defendant Carter and Mellor told FBI agents that Defendant Evanovich was the "main guy" and that she had been stealing batteries and rectifiers for him.[4]  (*Id.* ¶ 28; Haines Road Affidavit ¶ 19.)  Defendant Carter stated that Defendant Evanovich would give her information on cell sites, keys to access communications towers, and guidance on how to avoid law enforcement.  (Google Account Affidavit ¶ 28.)  Later searches of Defendant Carter's phone showed messages purportedly sent to Defendant Evanovich.  (Haines Road Affidavit ¶¶ 25-28.)

On February 6, 2023, Magistrate Judge Allison Claire signed a search warrant for the search of three Google Accounts, including the account associated with the talk2metel@gmail.com email address. (*See* ECF No. 142-1, Ex. 1)

In March 2023, AT&T discovered that it had received refurbished rectifiers that were previously stolen from AT&T.  (Haines Road Affidavit ¶ 32.)  AT&T contacted the seller, Tripwireless Inc., who determined they had purchased the rectifiers from Talk 2 Me.  (*Id.* ¶ 33.)  AT&T's review of records from Tripwireless showed that 223 rectifiers purchased from Talk 2 Me had been stolen from AT&T.  (*Id.*)

On April 3, 2024, Magistrate Judge Carolyn K Delaney signed a search warrant for 581 Haines Road, Auburn, California and the person of Stephan Evanovich.  (*See* ECF 138-1, Ex. 1.)

Defendant has filed Motions to Suppress as to both the evidence obtained from the talk2metel@gmail.com account via the Google Account Warrant and from the Haines Road Warrant.  Briefing on both Motions is completed.  (Google Account Mot.; Opp'n re:Google Account Mot.; Reply re:Google Account Mot. (ECF No. 131); Haines Road Mot. (ECF No. 138); Opp'n re:Haines Road Mot. (ECF No. 128); Reply re:Haines

---

[4] In the warrant affidavit submitted in connection with the Google Account Warrant, these statements are attributed to Defendant Carter.  (Google Account Affidavit ¶ 28.)  In the later physical search warrant affidavit, they are partially attributed to Mellor.  (Haines Road Affidavit (ECF No. 138-1, Ex. 1) ¶ 19.)

Road Mot. (ECF No. 132).) On December 11, 2025, the Court heard oral argument on this motion, at which time the Motion was submitted. (ECF No. 135.)

## LEGAL STANDARD

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." U.S. Const. amend. IV. "A judge may issue a search warrant if, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular location." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Alaimalo*, 313 F.3d 1188, 1193 (9th Cir. 2002).

When deciding whether a warrant was valid, courts must show deference to the magistrate judge's determination of probable cause. *Gates*, 462 U.S. at 236. Nonetheless, courts "will not defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 915 (1984) (internal quotation omitted).

## MOTION TO SUPPRESS: GOOGLE ACCOUNT

In the first of his two motions, Defendant Evanovich requests that the Court suppress all evidence seized from the search of a Google Account associated with the talk2metel@gmail.com email address. (Google Account Mot. at 1.) This Google Account was searched pursuant to one of three warrants issued on February 6, 2023, by Magistrate Judge Allison Claire in case 2:23-sw-00116. (*Id.* at 3; Opp'n re: Google Account Mot. at 1–2.) Defendant challenges only the search of the Google Account associated with the talk2metel@gmail.com email address, which the Government agrees he has standing to contest. (Google Account Mot. at 1; Opp'n re: Google Account Mot. at 4; Reply re: Google Account Mot. at 1–2.)

Defendant Evanovich raises three bases for suppression: (1) the warrant lacks probable cause, (2) the warrant is unconstitutionally overbroad in scope and duration,

and (3) the warrant fails to satisfy the particularity requirement of the Fourth Amendment. (Google Account Mot. at 1.) Defendant Evanovich also contends that the good faith exception does not apply.

**I. Probable Cause**

The affidavit submitted in support of the Google Account Warrant contained sufficient facts for Magistrate Judge Claire to find that there was a fair probability that evidence of a crime would be found in the talk2metel@gmail.com account. The affidavit included evidence that multiple individuals connected to Talk 2 Me were found in possession of stolen communications equipment or admitted to involvement in a scheme to do so. (Google Account Affidavit ¶¶ 9, 14-15, 27-28.) The affidavit states that when he was arrested in May 2022, Defendant Fountain stated that he worked for Talk 2 Me. (*Id.* ¶ 9.) When Defendant Fountain was arrested the second time, a vehicle with Talk 2 Me stickers was parked near Fountain's hotel room and was allegedly used by Fountain. (*Id.* ¶¶ 15, 18.) That vehicle was also stated to contain a box that contained stolen communications equipment being shipped to Talk 2 Me at Defendant Evanovich's home address. (*Id.* ¶ 18.) Moreover, the affidavit provides a clear connection between the talk2metel@gmail.com email address and the conduct alleged in that a search of Defendant Fountain's phone found emails from that address containing shipping labels believed to be for Fountain to send telecommunications equipment to purchasers. (*Id.* ¶ 24.a-d.)

These facts are sufficient to provide Magistrate Judge Claire with a substantial basis for determining the existence of probable cause. The information provided in the affidavit suggested the existence of a conspiracy to steal communications equipment to be resold by Talk2Me. The evidence supporting this, along with the evidence of the specific usage of the talk2metel@gmail.com email address, was more than sufficient to establish a fair probability that evidence of this crime would be found in the email account. *Illinois*, 462 U.S. at 238.

Defendant's arguments that the affidavit fails to establish probable cause focus on the insufficiency of evidence providing "connections between Mr. Evanovich and alleged criminal activity[.]" (Opp'n re: Google Account Mot. at 5.) As stated above, the evidence in the affidavit is sufficient to establish a fair probability that evidence of a crime would be found in the talk2metel@gmail.com email address. It was not necessary for the affidavit to establish probable cause for Defendant Evanovich's involvement in the criminal activity. *United States v. Adjani*, 452 F.3d 1140, 1146 n.5, 1147 (9th Cir. 2006) (stating that "[the] probable cause analysis focuses not on the owner of the property, but rather on whether evidence of the crime can be found on the property given the circumstances[,]" and also that "there was no need here for the agents expressly to claim in the affidavit that they wanted to arrest [the defendant], or even that [the defendant] was suspected of any criminal activity[]" to obtain a search warrant for a computer provided "that there was probable cause to believe that evidence of the crime in question . . . could be found on computer . . . ."). That said, there is ample information in the affidavit to establish probable cause to believe that Defendant Evanovich had engaged in criminal activity. At the very least, the connections between Defendant Evanovich, Talk 2 Me, the talk2metel@gmail.com email address, and Defendants Fountain, Carter, and Curl (as well as Mellor), only serve to bolster that there was a fair probability that evidence related to the theft of communications equipment would be found in the email account.

## II. Overbreadth and Particularity

Defendant secondarily argues that the warrant was unconstitutionally overbroad, "authoriz[ing] seizure of vast quantities of information unrelated to the alleged crimes[,]" and that the warrant failed to satisfy the particularity requirement. (Google Account Mot. 6–10.) As breadth and particularity are both parts of the specificity requirement of the Fourth Amendment, the Court addresses these arguments together.

A warrant is considered overbroad where the scope of a search warrant exceeds what is supported by probable cause. *United States v. Pilling*, 721 F. Supp. 3d 1113, 1121 (D. Idaho 2024). In determining the breadth of a warrant the Court considers three factors: "(1) whether probable cause existed to seize all items of a category described in the warrant; (2) whether the warrant set forth objective standards by which executing officers could differentiate items subject to seizure from those which were not; and (3) whether the government could have described the items more particularly in light of the information available . . . ." *United States v. Flores*, 802 F.3d 1028, 1044 (9th Cir. 2015).

Particularity, on the other hand, concerns whether the warrant "clearly state[s] what is sought." *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006). The description provided by the warrant "must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized. *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986). This requirement does not always mandate precise descriptions and can be satisfied by identification of categories of items, "depending on the circumstances of the case and the type of items involved." *Hill*, 459 F.3d at 973.

Defendant Evanovich argues that the warrant was overbroad as it permitted an overbroad seizure of digital information. Defendant argues that his complete search history, location history, photos, videos, contacts, calendar data, and voice queries are "manifestly irrelevant information" that the warrant permitted agents to seize. (Google Account Mot. at 7–8.) Defendant argues the warrant lacks particularity as it "authorizes a general search" without including a "meaningful protocol for separating relevant from irrelevant information[,]" and because it leaves discretion in the determination of relevance to the executing officers.

The warrant here follows the approach that has been approved for usage in digital search cases. *Flores*, 802 F.3d at 1044–45. Under this warrant scheme, officers are first permitted to "over-seize" all data in an account and then required to perform

a secondary search to determine what is relevant evidence that can lawfully be seized under the warrant.  This approach reflects the reality of searches of digital accounts.  The vastness of the data contained in most digital accounts, and the impossibility of determining what is relevant without examination of that data, makes it a necessity that warrants in such contexts permit an initial broad production.  *Id.* at 1044.  "'Over-seizing' is an accepted reality in electronic searching because there is no way to be sure exactly what an electronic file contains without somehow examining its contents." *Id.* at 1044–45 (cleaned up).  While there are recognized limits where over-seizing occurs, there is no indication that these are relevant here.

As structured, Section I of Attachment B to the warrant permitted officers to seek a production of data from the Google Account that was specifically limited in temporal scope based on the alleged crime at issue.  (Google Account Affidavit, Attachment B.)  Officers were then only permitted to seize data that fell into specific categories of relevant evidence pre-designated in Section II of Attachment B.  (*Id.*)  Within this structure, the warrant was not overbroad.  As discussed above, probable cause existed as to the Google Account, and the categories of information seized under Section II are well within the scope of that probable cause.  *Flores*, 802 F.3d at 1044.  The categories are also objectively described and could not have reasonably been described more particularly.  *Id.*

While Defendant also argues that the time frame of data authorized for seizure by the warrant – May 20, 2022, to December 19, 2022 – was overbroad.  (Google Account Mot. at 6–7.)  The Court disagrees.  The period approved by the warrant was supported by the affidavit.  The start date, May 20, 2022, was the date of Defendant Fountain's first arrest in California.  The end date, December 19, 2022, was the date of Defendant Carter and Mellor's arrest.  At these times, and the period in between, there was strong evidence to suggest the existence of an ongoing criminal conspiracy connected to Talk 2 Me.  Not every incident during this period involved the talk2metel@gmail.com email account; there was, as stated above, probable cause to

support the issuance of a search warrant related to that account. But the fact that similar and related criminal conduct connected to Talk 2 Me and Defendant Evanovich continued to occur during this period supports the existence of the ongoing scheme during this period.

The warrant also satisfies the particularity requirement. Section II of Attachment B to the warrant describes the specific relevant categories of data to be seized with the highest degree of specificity possible, given the digital form of the evidence involved and the nature of the circumstances of the case. (Google Account Affidavit, Attachment B.) These categories of evidence are more than sufficient to satisfy the particularity requirement. *See Hill*, 459 F.3d at 973; *see also Flores*, 802 F.3d at 1044. Despite Defendant Evanovich's contention to the contrary, the described categories in that section were as specifically described as was reasonably possible under the circumstances.

Given the above, the Court finds that the email search warrant satisfies the specificity requirement under the Fourth Amendment both as to breadth and particularity. Defendant's Motion on this basis is denied, and thus the Motion is denied in its entirety.

## MOTION TO SUPPRESS: PHYSICAL SEARCH

In Defendant Evanovich's second motion, he seeks suppression of evidence seized as a result of the search warrant that was issued for the Haines Road location and Defendant Evanovich's person. (*See* Haines Road Mot.) Defendant's Motion broadly raises the same categories of arguments raised above: that there was not probable cause for the warrant, that the warrant was overbroad, and that the warrant lacked particularity.

**I. Overbreadth and Particularity**

The warrant was neither overbroad nor lacking in particularity. The warrant clearly describes specific items with objective standards for determining if they were subject to seizure. *Flores*, 802 F.3d at 1044. It is also not possible for the government

to have described these items with any more particularity based on the information available to the officers. *Id.* While, as discussed below, Defendant raises valid concerns about the staleness of the information supporting the warrant application, there is no question that the categories of items that the warrant permitted to be seized had a fair probability of containing evidence of the crimes in question. Thus, the warrant was not overbroad. While Defendant raises specific concerns about the particularity of provisions related to electronic devices, these provisions appear sufficiently specific based on the circumstances of the case and the type of items involved. (*See* Haines Road Affidavit, Attachment B ¶ 15.a (permitting seizure of "evidence of who used, owned, or controlled the digital device or other electronic storage media <u>at the time the things described in this warrant were created, edited, or deleted</u> . . . ." (emphasis added)); Haines Road Affidavit, Attachment B ¶ 15.a (permitting seizure of "evidence indicating the computer user's state of mind <u>as it relates to these crimes</u> . . . ." (emphasis added)).) These portions of these categories further increase the particularity of what is described in the warrant.[5]

In short, the warrant for the search of the Haines Road location and Defendant Evanovich's person was not overbroad and had sufficient particularity to satisfy the specificity requirement of the Fourth Amendment. Defendant's Motion on this basis is denied.

## II. Probable Cause

Defendant also argues that the affidavit supporting the warrant lacked sufficient evidence to establish probable cause for the warrant. This argument is largely split into two main areas: the staleness of the information contained in the warrant and the

---

[5] Defendant also argues that the portions of the search warrant related to evidence on digital devices effectively authorize a general warrant, as it necessitates that the digital evidence be reviewed to determine if it falls within the categories that may be seized under the warrant. (Reply re:Haines Road Mot. at 5.) However, as discussed above, the unique reality of digital evidence necessitates a multi-level review to determine if seizure is appropriate. (*See supra* Motion to Suppress: Google Account, II.)

10

sufficiency of evidence establishing that Defendant Evanovich knowingly received stolen property.

The latter argument – that the affidavit does not establish that the affidavit failed to connect Defendant Evanovich to the knowing receipt of stolen property – is unconvincing. The warrant affidavit provides multiple independent sources of evidence supporting Defendant Evanovich's alleged involvement in the scheme:

- During his May 2022 arrest in connection with an alleged attempt to steal telecommunications equipment, Defendant Fountain stated he worked for Talk 2 Me and Defendant Evanovich was his boss. (Haines Road Affidavit ¶¶ 7-9.)
- At the time of his August 2022 arrest for stealing telecommunications equipment, Defendant Fountain was allegedly using a vehicle with Talk 2 Me stickers on it. (*Id.* ¶ 10.)
- Searches of Defendant Fountain's phone found conversations between Defendants Fountain and Evanovich about obtaining and selling telecommunications equipment. (*Id.* ¶¶ 12, 17.)
- Defendant Carter identified Defendant Evanovich as the "main guy" who she was working for, claimed she had stolen batteries and rectifiers from cell towers at Defendant Evanovich's direction, and told agents that he provided her with access information for communications towers. (*Id.* ¶¶ 19-20.)
- CashApp and Block, Inc. records show alleged payments between Defendant Evanovich and Defendant Carter for telecommunications equipment. (*Id.* ¶¶ 25-31.)
- Rectifiers bought from Talk 2 Me and shipped from Defendant Evanovich's residence were identified as stolen by AT&T when they were connected to AT&T towers. (*Id.* ¶ 32.)

11

- An additional 223 rectifiers sold by Talk 2 Me were identified as stolen from AT&T based on their serial numbers. (*Id.* ¶ 33.)

Certainly, some of this evidence is circumstantial or reliant on the statements of Defendant Evanovich's co-defendants. But it is not necessary for the warrant affidavit to prove Defendant Evanovich's involvement with the scheme beyond a reasonable doubt. If not for the staleness issue discussed below, the affidavit clearly provided the Magistrate Judge with a substantial basis to determine that, under the totality of the circumstances, there was a fair probability that evidence related to the sale of stolen telecommunications equipment would be found in Defendant Evanovich's residence and on his person.

The staleness of the information does raise some concerns regarding the sufficiency of the probable cause showing in the affidavit. The warrant was submitted and signed on April 3, 2024. The latest events described in the affidavit directly related to stolen telecommunications equipment is the discovery by AT&T, in March 2023, that AT&T had purchased rectifiers it believed to be stolen that were originally sold by Talk 2 Me. However, the affidavit does not state or otherwise indicate when Talk 2 Me sold these allegedly stolen rectifiers.[6] Defendant Carter and Mellor's arrest on December 19, 2022, is thus the latest event that is evidence of the existence of ongoing criminal activity.

Given the fact that there is a nearly sixteen-month gap between the last criminal conduct identified in the affidavit and the issuance of the warrant, concern about whether this evidence was too stale to support a finding of probable cause is valid. In determining whether the evidence supporting probable cause is stale, "[t]he passage of time is not necessarily a controlling factor . . . ." *United States v. Foster*, 711 F.2d

---

[6] Similarly, the affidavit also provides information about other sales of telecommunications equipment by Talk 2 Me and Defendant Evanovich that occurred in 2023 and 2024. However, besides a bare statement by the agent that they "believe EVANOVICH is still purchasing stolen telecommunications equipment and shipping this equipment over state lines[,]" there is no evidence provided that these transactions involved stolen equipment. Thus, they are, at best, of minimal relevance to the question of staleness.

871, 878 (9th Cir. 1983). "The court should also evaluate the nature of the criminal activity and the kind of property for which authorization to search is sought." *Id.*; *see Williams v. County of Santa Barbara*, 272 F. Supp. 2d 995, 1012 (C.D. Cal. 2003) (quoting *United States v. Pitts,* 6 F.3d 1366, 1369 (9th Cir. 1993)).

Ultimately, the Court need not determine whether the evidence was too stale to support the issuance of a warrant. The determination of staleness is a fact-intensive question, and the period after which evidence becomes stale is dependent on "the nature of the criminal activity and the kind of property" in question. *See Foster*, 711 F.2d at 878. Courts have upheld probable cause determinations in numerous cases where the information supporting the issuance of a warrant was far older than the evidence presented in the affidavit in this case. *See United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991) (collecting cases). This is not to say that the determinations in those cases are directly relevant here – as noted, the determination of staleness is dependent on the specific facts of a case. But they do strongly support that application of the good-faith exception is appropriate here.

"The good-faith exception precludes suppression of evidence seized by officers who acted 'in objectively reasonable reliance' on a search warrant that is later declared invalid." *United States v. Artis*, 919 F.3d 1123, 1133 (9th Cir. 2019) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). In *Leon* the Supreme Court outlined four situations where the good faith exception does not apply: (1) when the affiant knowingly or recklessly misleads the judge with false information; (2) when the judge wholly abandons his or her neutral role; (3) when the affidavit is so lacking in indicia of probable cause that official belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that executing officers cannot reasonably presume it to be valid. 468 U.S. at 923. The third option, concerning the adequacy of probable cause, is the relevant situation here.

In assessing whether the affidavit is lacking in indicia of probable cause such that official belief in its existence is objectively unreasonable, "the inquiry [is] whether

the affidavit is 'sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause.'" *United States v. Luong*, 470 F.3d 898, 903 (9th Cir. 2006) (quoting *Leon*, 468 U.S. at 926).  Put differently, "[a]n affidavit is so lacking in indicia of probable cause, or bare bones, when it fails to provide a colorable argument for probable cause.  A colorable argument is made when 'thoughtful and competent judges' could disagree that probable cause does not exist." *United States v. Underwood*, 725 F.3d 1076, 1081–82 (9th Cir. 2013) (citations omitted).

Here, the affidavit does not fail to provide a colorable argument for probable cause.  While there is a valid debate to be had about whether the information in the warrant was stale, it would be a debate in which thoughtful and competent judges could disagree.  As described above, the determination of whether information is so stale as a fact-intensive evaluation where courts have found probable cause with even longer delays.[7]  *See Foster*, 711 F.2d at 878; *see also Greany*, 929 F.2d at 525.  In this context, it cannot be said that the temporal gap at issue here renders the affidavit so lacking in indicia of probable cause that official belief in its existence is objectively unreasonable.  The officers acted in objectively reasonable reliance on the Haines Road Warrant.  As such, even if the evidence in the affidavit was stale, the good-faith exception applies, and the evidence seized must not be suppressed.

Accordingly, Defendant's Motion as it relates to the sufficiency of the probable cause in this warrant is denied, and the Motion is thus denied in its entirety.

////

////

////

////

////

---

[7] Temporal gaps are also generally less of a concern for warrants seeking digital evidence due to the high likelihood that such evidence will still exist after a longer passage of time.  *See United States v. Kvashuk*, 29 F.4th 1077, 1087 (9th Cir. 2022).  This is only partially relevant here as the warrant approved the seizure of both physical and digital evidence.

**CONCLUSION**

For the reasons stated above, IT IS HEREBY ORDERED that Defendant Evanovich's Motions to Suppress (ECF Nos. 137, 138, 142) are DENIED.

IT IS SO ORDERED.

Dated: __**January 7, 2026**__

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE